UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : CRIMINAL NO. 3:08-CR-265 |
| v. | : |
| | : (JUDGE MANNION) |
| STEPHEN HUMANIK, | : |
| Defendant | : |
| | : |

## MEMORANDUM

Defendant Stephen Humanik pled guilty in 2008 to the receipt of child pornography in violation of 18 U.S.C. §2252(a)(2). (Doc. 23). The Honorable Judge James M. Munley sentenced him to a term of imprisonment of 210 months and a term of supervised release of fifteen years upon his release from imprisonment. (Doc. 29). Defendant was released from imprisonment and began his term of supervised release on March 8, 2024. (Doc. 45 at 1; Doc. 46 at 2).

The United States Probation Office for the Middle District of Pennsylvania has petitioned for modification of the conditions of Defendant's supervised release. (Doc. 39). The court held a hearing regarding this petition, and counsel was appointed to represent Defendant. (Docs. 41–43). The court also allowed the parties to submit briefs regarding Defendant's objections to the petition, and they have done so. (Doc. 45; Doc. 46).

## I.   AUTHORITY TO MODIFY CONDITIONS

A district court may, after considering certain statutory sentencing factors, "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. §3583(e)(2). This authority to modify conditions of supervised release is discretionary, and the district court must "explain and justify" the conditions. *United States v. Wilson*, 707 F.3d 412, 416 (3d Cir. 2013).

## II.   OBJECTIONS

Defendant has raised three objections to the requested modifications. Two objections are constitutional: he argues generally that modification would violate the Constitution's Ex Post Facto Clause, and specifically that a proposed special condition prohibiting him from accessing "any social media ... where you could interact with a child" would violate the First Amendment. (Doc. 45 at 11–14). He also argues that, under the factors governing the imposition of sentences, the modifications are not warranted. (Doc. 45 at 9–10).

### A.  Ex Post Facto Objection

Article I of the Constitution provides that "[n]o ... ex post facto Law shall be passed." U.S. Const. art. I §9. This clause "bar[s] enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000). "To establish an Ex Post Facto Clause violation," a challenger "must show that (1) 'there was a change in the law or policy that has been given retroactive effect,' and (2) the law 'disadvantaged' him by either altering the definition of criminal conduct or increasing the punishment for the crime." *United States v. Norwood*, 49 F.4th 189, 215 (3d Cir. 2022) (quoting *Newman v. Beard*, 617 F.3d 775, 784 (3d Cir. 2010)).

Defendant argues that:

> Here the probation office is seeking to put into place new conditions that were not available at [Defendant's] sentencing. Thus, these new conditions can be asserted as a basis for violating [Defendant's] supervision where they could not have been before, thereby increasing [Defendant's] criminal exposure ex post facto.

(Doc. 45 at 13–14).

Modification would not violate the Ex Post Facto Clause.

*First*, "[a]s the text of the Clause makes clear, it 'is a limitation upon the powers of the Legislature, and does not of its own force apply to the judicial branch of the government.'" *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001)

- 3 -

(quoting *Marks v. United States*, 430 U.S. 188, 191 (1977)). And 18 U.S.C. §3583(e)(2), which gives the court authority to modify conditions of supervised release, was last amended before 2008. *See* P.L. 100-182 §12, 101 Stat. 1268, Dec. 7, 1987. Defendant identifies no law which is sought to be applied here but was enacted after his crime. So his suggestion that the conditions requested now "were not available" at his sentencing is unavailing. (Doc. 45 at 13–14).

*Second*, the Clause applies only to punishment, *see Smith v. Doe*, 538 U.S. 84, 92 (2003), and the imposition or modification of conditions of supervised release is not itself a punitive measure. *See United States v. Granderson*, 511 U.S. 39, 50 (1994) ("Supervised release, in contrast to probation, is not a punishment in lieu of incarceration."); *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) ("[T]he primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment."). And though penalties may result from violations of the conditions of supervised release,[1] the government does not now seek to impose a penalty; it simply asks for

---

[1] Any such penalty is attributed to the defendant's original conviction. *Johnson v. United States*, 529 U.S. 694, 700–701 (2000).

- 4 -

modification of conditions. Nor, in any event, has Defendant identified some increase in the potential penalties for violation.

*Third*, and most fundamentally, "for a criminal or penal law to be *ex post facto*[,] it must be retrospective." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). To the extent Defendant fears that he will be penalized for violating new conditions based on conduct occurring before modification, there is no indication that the proposed modifications would apply retrospectively. The government assures us that they would not, (Doc. 46 at 15), and the court could not, in accordance with due process, enforce them retrospectively. *Marks v. United States*, 430 U.S. 188, 192 (1977).

## B.   First Amendment Objection

One requested addition to Defendant's conditions of supervised release is:

> You must not access or have anyone access on your behalf any social media, group messaging applications, chat rooms, gaming systems, peer-to-peer file sharing services, or any site where you could interact with a child.

(Doc. 45 at 16).

Defendant contends that this condition would violate his First Amendment right to freedom of speech. (Doc. 45 at 11–12).

"[D]istrict courts must 'consider the First Amendment implications' of their conditions of supervised release." *United States v. Holena*, 906 F.3d

288, 294 (3d Cir. 2018) (quoting *United States v. Voelker*, 489 F.3d 139, 150 (3d Cir. 2007)). "Conditions that restrict 'fundamental rights must be narrowly tailored and directly related to deterring the defendant and protecting the public.'" *Id.* (quoting *United States v. Loy*, 237 F.3d 251, 256 (3d Cir. 2001)). "[A] condition is 'not narrowly tailored if it restricts First Amendment freedoms without any resulting benefit to public safety.'" *Id.* (quoting *Loy*, 237 F.3d at 266).

In *Packingham v. North Carolina*, 582 U.S. 98, 101, 109 (2017), the Supreme Court held invalid a law that banned sex offenders from accessing "a commercial social networking Web Site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." That law, the Court opined, "enact[ed] a prohibition unprecedented in the scope of the First Amendment speech it burden[ed]," as it "with one broad stroke bar[red] access to what for many are the principle sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge." *Id.* at 108. "In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." *Id.*

In *Holena*, the Third Circuit considered the First Amendment implications of special conditions of supervised release that permanently forbade a defendant from using the internet or possessing or using any computers, electronic communications devices, or electronic storage devices. 906 F.3d at 290. The defendant had pled guilty to attempting, through an online chatroom, to entice a minor to engage in sexual acts. *Id.* The court viewed those broad bans as limiting First Amendment activity unrelated to the defendant's crime, and thus insufficiently tailored toward the purpose of deterrence and public safety. *Id.* at 294. Like the law invalidated in *Packingham*, "[t]heir 'wide sweep preclude[d] access to a large number of websites that are most unlikely to facilitate the commission of a sex crime.'" *Id.* at 295. The court further instructed that "[u]nder *Packingham*, blanket internet restrictions will rarely be tailored enough to pass constitutional muster." *Id.*

Defendant used "peer-to-peer" file sharing programs to share images of child pornography and online chat rooms to communicate about such images. (Doc. 46 at 2). The proposed condition here would restrict his use only of those types of platforms which he utilized for his crimes: "social media, group messaging applications, chat rooms, gaming systems, peer-to-peer file-sharing services or any site where you could interact with a child."

(Doc. 45 at 6). It is thus narrowly tailored to Defendant's crime. It is also directed toward deterrence and public safety, because its aim is to prevent Defendant from engaging in the type of harmful conduct for which he was convicted.

This restriction is significantly narrower than those at issue in *Packingham* and *Holena*. Unlike the North Carolina law invalidated in *Packingham*, which applied to any registered sex offender, the condition proposed here is particularized to an individual whose offense involved using the internet. And unlike the special conditions in *Holena*, this is not a lifetime ban; it would apply only during Defendant's term of supervised release. Nor would it broadly bar the entire internet and computers; it applies only to sites where one could interact with a child—a condition that relates directly to Defendant's offensive conduct. For these reasons, although this condition would restrict Defendant's First Amendment activity, the court finds that it would not do so unconstitutionally.

## C. Necessity of Modification

Though Defendant's constitutional objections are unconvincing, the court concludes that, with one exception, the requested modifications are not warranted.

District courts may impose special conditions of supervised release that are reasonably related to "the nature and circumstances of the offense and the history and characteristics of the defendant," deterrence of criminal conduct, protection of the public "from further crimes of the defendant," and effective correctional treatment. 18 U.S.C. §3583(d)(1) (cross-referencing §3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)). The conditions must also "involve[] no greater deprivation of liberty than is reasonably necessary for" those purposes, and must be consistent with the Sentencing Commission's pertinent policy statements. §3583(d)(2)–(3); see U.S.S.G. §5D1.3. District courts must justify special conditions by finding supporting facts. Holena, 906 F.3d 288, 290. There must be "some evidence that the special conditions imposed are tangibly related to the goals of supervised release." Id.

When he imposed the conditions of Defendant's supervised release, Judge Munley considered the section 3553(a) factors. (See Doc. 36 at 12). He required that Defendant comply with sex offender registration law, submit to searches by law enforcement, participate in a sex offender treatment

program, avoid contract with persons under the age of 18, comply with a computer monitoring/filtering agreement, and undergo a mental health evaluation and, if recommended, treatment. (Doc. 29 at 3). These conditions are closely and comprehensively related to the sentencing factors listed above but do not unduly deprive Defendant of liberty.

With one exception, the court finds no indication that these conditions are inadequate, such that additional or different conditions are necessary. It has thus far not been informed of any violation by Defendant or other conduct suggesting a return to his criminal behavior. And the apparent aims of the requested modifications are encompassed by the existing conditions. Conversely, while the court acknowledges that (as the government points out, (Doc. 46 at 6–7)), some of the requested modifications effectively loosen restrictions, neither does the court view the present conditions as overly restrictive.

The one exception is drug testing. At sentencing, Judge Munley suspended the usual drug testing condition based on his determination that Defendant posed a low risk of future substance abuse. (Doc. 29 at 3). But because Defendant failed a drug urinalysis test for Suboxone while at the halfway house, the Probation Office now requests that a condition be added requiring Defendant to "refrain from any unlawful use of a controlled

substance" and "submit to periodic urinalysis testing as directed by the probation officer." (Doc. 39 at 3). The court considers this new condition justified by the fact of Defendant's failed drug test. It is related to the goal of rehabilitation, because it is oriented toward ensuring his cessation of drug use. It also does not unfairly limit Defendant's liberty, because it only prohibits what is already unlawful and requires the minor inconvenience of periodic urine testing. Therefore, the court will add this condition to Defendant's existing conditions of supervised release.

### III. CONCLUSION

For the foregoing reasons, the court will grant the Probation Office's request for modification of Defendant's conditions of supervised release in part and deny it in part. It will grant the request to add a condition forbidding Defendant from unlawfully using controlled substances and requiring him to submit to periodic drug urinalysis testing. It will otherwise deny the request. An appropriate order follows.

*[signature]*

_____
MALACHY E. MANNION
United States District Judge

**DATE: August 14, 2024**
08-265-01